[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 3414
This is an action to determine custody and visitation of a minor child, as well as support.
Many of the facts that give rise to this action are not in dispute. The parties have never been married to each other. They became involved in a relationship in the summer of 1990, as a result of which a son, Casey Thomas Harrington Kinsey, was born on October 9, 1991. At the present time, there are no court orders regarding custody. There is a present order for visitation for the father to have visitation with the son on alternate weekends from Friday at 5 p.m. to Sunday at 6:30 p.m., and on Tuesday evening from 5 p.m. to 8 p.m. The defendant is presently paying support to the plaintiff in the amount of ninety-eight ($98) dollars weekly by wage garnishment.
The romantic relationship between the plaintiff and the defendant commenced in 1990, when the parties started to live together. They discussed having a child without being married. The plaintiff now resides at the army base at Fort Dix, New Jersey, where the Federal Correctional Institute is located, with the minor child. She lives in a two-bedroom duplex that has one bath, living room, dining room and kitchen. There are swimming pools and miniature golf, as well as an arts and crafts center where she resides. The child is in day care at the Fort Dix base. There are approximately one hundred twenty-five (125) children in day care. The child goes to day care every day except Friday. The plaintiff does not work on Fridays. Her present work schedule is from 7:30 a.m. to 4 p.m. on Mondays, Wednesdays and Thursdays, and from 12:30 p.m. to 9 p.m. on Tuesdays. The plaintiff is presently engaged to be married to Jiri Schanil.
After the birth of the minor child, the plaintiff and the defendant were both working as correctional officers at the Federal Correctional Institute in Danbury, Connecticut. The plaintiff was on a rotating shift and the defendant was on a set shift. The child was placed in day care at the Federal Correctional Institute in Danbury, and the plaintiff resumed working there. In 1994, problems arose at the day care at the Federal Correctional Institute, and the plaintiff removed the child from day care at that location and enrolled the child in the Children's Center in Danbury, Connecticut. On September 3, 1995, the defendant brought the child back to the plaintiff's CT Page 3415 residence after a weekend visit. An argument ensued between the parties and the defendant struck the plaintiff in the face, causing bleeding and bruising. She went to the hospital following that incident. She returned to work the following day and was told to return home due to the nature of her injuries. The defendant claims that he hit the plaintiff in self-defense. The court finds that that claim is not credible. The driving distance from Fort Dix to the Danbury mall is approximately two and one-half hours each way.
The child enjoys the time that he spends with the defendant.
The plaintiff was employed at the Federal Correctional Institute at Danbury, Connecticut, as a correctional officer until September, 1995. She then was transferred to the Federal Correctional Institute at Fort Dix, New Jersey, where she is presently employed. The plaintiff requested a hardship transfer from the Federal Correctional Institute in Danbury to the Federal Correctional Institute at Fort Dix, New Jersey as a result of the September 3, 1995 incident when the defendant physically assaulted her. The last day that the plaintiff resided in Connecticut, was on or about September 26, 1995.
The defendant is presently married and has one minor child issue of that marriage. The defendant and his wife and minor child reside in the basement level of a home owned by the defendant's parents. He has two bedrooms with the use of a bath on the upper floor and the kitchen on the main floor level. There is also a living room and dining room area.
The defendant is employed at the Federal Correctional Institute in Danbury, Connecticut, as an inmate systems officer. In addition to the various motions filed in this case, the parties have also had contact with the Magistrate Court, Small Claims Court, and Probate Court regarding issues related to the custody and visitation and support dispute. The defendant claims that the plaintiff has been physically and emotionally abusive to the child. The court finds that those claims are not credible. The court has the benefit of a thorough and comprehensive report from the Family Services unit. The court adopts the following as findings in this case from that report.
 Casey has received health care since his birth from Dr. Oscar Loscano. The child was reported to be in good health except for minor problems common to normal children. CT Page 3416 Dr. Loscano stated that the mother has brought Casey in when he is sick as well as for checkups ups and for immunizations. The physician stated that there has never been any evidence suggestive of child neglect or abuse. On the contrary, the Doctor noted, I have always felt that the mother was providing excellent care for the child.
 The Department of Children and Families has received six referrals on this family. In November, 1993, the father reported that Casey had bruises on both sides of his face, and he suspected that the mother had abused the child. The mother took the child to be medically examined, and Dr. Loscano responded to the Department of Children and Families as he responded above to the Family Services Office. The day care facility was also contacted, and it was reported that the father had questioned Casey in what appeared to be an inappropriate and leading manner. The allegations were unsubstantiated and the referral expunged. In December, 1993, the father made a referral stating that Casey had a split lip and alleged that the mother had caused it. The child was examined at Danbury Hospital and the documentation indicated that the injury could have occurred from dry skin, fall cold symptoms which the child had, possibly parched skin or could be related to trauma. The mother brought in documentation to the Family Service office, that Casey's lip was cut during his visit to the Children's Center at an open house. The allegations were not substantiated, however, the record was not expunged.
 The father also brought the child to the police department and claimed that his son was assaulted by the mother's fiance. The father had noticed a bruise on the child's left ear, and he stated the mother's finance had pulled his ear. The police contacted the Department of Children and Families who requested that the child stay with the father for the night. The mother refused. The child was brought to Danbury Hospital where he was examined and found to be in good health and released to his mother. Reportedly this case was expunged. The Department of Children and Families was again contacted on January 2, 1995 with a referral by the mother regarding the sexual activity previously referred to at the home of the day care provider. It was reported by the mother and the day care providers that Casey stated that he saw this behavior when his `one and only Dad' showed him a magazine: Both parents denied CT Page 3417 having any pornographic materials in their homes or exposing the child to sexually explicit materials. It was reported that the allegations of sexual abuse/exposure were unrealistic and the incident was most likely the result of exploratory behavior on both children's part. It was reported that the mother had made arrangements for Casey to participate in counseling on a regular basis. It was also stated that given the previous referrals investigated, the parents animosity towards one another, and the on-going custody dispute there was concern for the emotional effects on the child. The Department of Children and Families recommended that the Court appoint an attorney for Casey. There were two subsequent referrals made by Casey's day care provider as previously discussed. The Department of Children and Families was concerned that the mother had not followed through with the recommendation for counseling and believed that the child needed to be in therapy. The case is reportedly being kept open until completion of this custody study. . . .
 The mother participated in weekly individual counseling with social worker, Mollie Anderson, from October, 1994 to June, 1995. Initially the counseling addressed parenting skills and issues and then addressed issues related to the stress of this custodial dispute and issues related to Mr. Harrington. It was reported that the mother made positive steps during the treatment. Reportedly, Ms. Anderson referred the mother to Dr. Martin Olanoff for an evaluation for medication pursuant to the psychological evaluation by Dr. Robert Colen. The mother reported taking Zoloft, an anti-depressant, and an anti-anxiety medication, Xanax, around the time of child's visitation with the father.
 Both parents participated in a psychological evaluation with Dr. Robert Colen that is available for the Court's review. From the testing, the mother was portrayed as depressed, overactive, highly stressed and struggling to deal with this custody dispute. Dr. Colen stated that the mother has shown an impulsivity, low frustration tolerance, and employed poor judgment. Testing revealed marked paranoid ideation concerning this custody situation and she was described as guarded and mistrustful of others particularly the father who she views as victimizing and violating her. Dr. Colen recommended that the mother continue in individual counseling and participate in a CT Page 3418 psychiatric or medication consultation. The psychologist stated his opinion that the mother needs help in coming to terms with the reality that the father will have contact with Casey no matter what the custody decision is. Dr. Colen stated that he feels the mother is a loving and devoted parent who should be able to provide a positive structured home environment for Casey. His observation of the mother-son interaction was very positive, and he stated that the youngster appears to be happy and well adjusted, and Dr. Colen found no indication of neglect or abuse. He expressed concerns about the mother's ability to work collaboratively with the father and to support Casey's relationship with his father. The psychologist stated that he did not feel that the mother is a present threat to the father or stepmother, however, he recommended on-going monitoring based upon his concerns regarding her emotional state. . . .
 The father participated in a psychological evaluation with Dr. Robert Colen that is available for the Court's review. From the testing, the father was portrayed as a tense, angry, hostile, and controlling man who also is prone to passive-aggressive and acting out behavior at times. He was described as impulsive and inclined to use poor judgment when stressed. It was reported that he could be inflexible and fixed in his beliefs. The psychologist stated his opinion that the father appeared very committed to being available for his son. Dr. Colen was positive in his description of the father's interaction with Casey which he described as playful and loving. The psychologist stated his opinion that the father would be able to provide care for Casey and offer him a loving home. Dr. Colen expressed concerns about the father's ability to work with the mother collaboratively and also noted that the father talked negatively about the mother in the presence of Casey. Counseling was recommended to assist the father in dealing with his significant anger and behavior.
(Internal quotation marks omitted.)
The parties entered into an agreement on December 17, 1992. That agreement provided as follows:
 In lieu of a court custody battle we agree to the following regarding the custody of our son, Casey Thomas: CT Page 3419
 1. His biological mother, Suzanne Kinsey, is the custodial parent, responsible for the basic health, care welfare of Casey — to include housing, food, clothing.
 2. His biological father, Thomas Harrington, has visitation rights, to include at least, but not limited to, one overnight every other week. Additional or extended visits to be allowed, as arranged with Suzanne.
 3. Suzanne is responsible for maintaining a health insurance program a life insurance policy for Casey.
 4. Thomas is responsible for all medical expenses not paid for by Casey's insurance, including but not limited to, prescriptions, dental eye care.
 5. Each parent must notify the other provide an emergency phone number, when Casey is to be taken out of the state of residence of either parent.
 6. If either parent relocates they must notify the other of their current home work, complete addresses phone numbers.
 7. Thomas agrees to pay Suzanne $100 a week ($200 a pay period toward child care costs basic support for Casey.
 8. Thomas must maintain a life insurance policy on himself, of which Casey is the beneficiary of (at least) $50,000 toward his support /or college education, depending on Casey's age at the time.
 9. This is a legally binding agreement, which may be reviewed amended, as necessary agreed.
On March 18, 1993, the defendant filed an acknowledgment of paternity regarding the minor child. A support order was entered by the magistrate on May 26, 1993, for the defendant to pay to the plaintiff support in the amount of ninety-eight ($98) dollars per week. The parties have been embroiled in a battle of motions and court proceedings since October of 1993. By motion, dated October 27, 1993, coded No. 111, the plaintiff sought custody of the minor child. The defendant filed a motion for visitation, CT Page 3420 coded No. 110, dated October 25, 1993. That motion has some seven pages of allegations. By order dated, December 6, 1993, the defendant was granted various visitation rights, including alternating weekends from Friday after the child is finished with day care until Sunday at 7:30 p.m., as well as other times. The defendant filed a motion to modify visitation, dated December 22, 1993, Coded No. 112. The defendant filed a motion for sole custody, pendente lite and support pendente lite, dated December 22, 1993, coded No. 113. The defendant filed a motion to refer to Family Services for study regarding visitation, dated December 22, 1993, coded No. 114. That motion was granted and the matter was referred to Family Services for a study for custody and visitation. The parties entered into an agreement, dated January 31, 1994, and approved by the court on January 31, 1994, coded No. 115, that included a mutual restraining order, as well as for various visitation orders and pickup and delivery orders being entered. The defendant filed a motion to refer to Family Services for a custody and visitation study, dated February 4, 1994, coded No. 116. The defendant filed a motion to restrain plaintiff from permanently removing the minor child from the State of Connecticut, dated February 16, 1994, coded No. 117. That was granted by agreement of the parties on March 7, 1994. The defendant filed a motion for sole custody and child support, dated February 16, 1994, coded No. 118. The defendant filed a motion to modify visitation, dated February 16, 1994, coded No. 119. The case was referred to Family Services on the issues of custody and visitation for study on February 28, 1994, by order coded No. 120. The defendant filed a motion for contempt, dated March 11, 1994, coded No. 121. The defendant filed a motion for contempt and sanctions, dated March 23, 1994, coded No. 122. The defendant filed a motion to restrain, dated March 25, 1994, coded No. 123. An order was entered, dated June 21, 1994, regarding the motion coded No. 123, granting that motion as a result of a stipulation between the parties. The defendant filed a motion for contempt, dated July 29, 1994, coded No. 126. The defendant filed a motion for contempt, dated July 29, 1994, coded No. 127. The defendant filed a motion for order, dated July 29, 1994, coded No. 128. The defendant filed a motion for contempt regarding disclosure, dated July 29, 1994, coded No. 129. On August 29, 1994, the court granted the defendant's motion for contempt, coded No. 126, denied the defendant's motion, coded No. 127, and granted the motion, coded No. 128. On September 2, 1994, the defendant filed a motion for contempt, coded No. 132. On September 9, 1994, the defendant filed a motion to modify visitation, coded No. 133. The defendant filed a motion for CT Page 3421 relief from abuse/temporary custody, dated October 30, 1994, coded No. 134. The plaintiff filed a motion for contempt, dated October 31, 1994, coded No. 135. The plaintiff filed a motion for sanctions, dated October 31, 1994, coded No. 136. The plaintiff filed a motion for contempt, dated October 31, 1994, coded No. 137. The defendant filed a motion for contempt/restraining order, dated November 9, 1994, coded No. 138. The defendant filed an objection to a motion for sanctions, dated November 9, 1994, coded No. 139. The defendant filed a motion for order, dated November 17, 1994, coded No. 140. The parties filed a stipulation and/or agreement, dated October 2, 1994. On January 30, 1995, Family Services filed its approval to have the matter referred on the issues of custody and visitation for study, conditioned upon the defendant paying in full Dr. Robert Colen's bill, with the matter continued to February 14, 1995 for verification of payment with the parties not required to appear if payment was made, and the case was continued to June 26, 1995 at 2 p.m. The Family Services' approval was made an order of the court on February 1, 1995. The parties entered into a stipulation and/or agreement, dated February 14, 1995, in which the defendant's motion for contempt, coded No. 135, was to be denied and providing for certain visitation on alternate weekends from 3 p.m. Friday until 3 p.m. Sunday, and every Tuesday from 3 p.m. to 7:30 p.m. It also provided for pickup and dropoff of the child. That stipulation was made an order of the court on February 14, 1995. On March 7, 1995, the defendant filed a motion to modify support, coded No. 144. The defendant filed a motion for contempt/visitation, dated March 14, 1995, coded No. 145. A finding of contempt was entered with an order that two hundred ($200) dollars in counsel fees be paid by April 7, 1995. That order was entered on April 3, 1995. The defendant filed a motion for contempt/visitation, dated April 13, 1995, coded No. 151. A stipulation entered into between the parties on May 8, 1995 was approved by the court, coded No. 152. That stipulation provided that the motion for contempt, coded No. 151, would go off. It also provided for visitation for every other weekend from 5 p.m. Friday until 6:30 p.m. Sunday, and Tuesdays from 5 p.m. to 8 p.m., with provisions for pickup and dropoff. On May 17, 1995, the plaintiff filed a motion for continuance, coded No. 154. The parties filed an "order clarification," dated March 28, 1995, coded No. 155, that was approved by the magistrate on May 24, 1995, clarifying a prior order entered by the magistrate. The defendant filed a motion for contempt/visitation, dated September 1, 1995, coded No. 159. That motion was denied by the court on October 10, 1995. The defendant filed a motion for contempt/visitation, dated September 1, 1995, CT Page 3422 coded No. 160. That motion was denied by the court on October 10, 1995. The defendant filed a motion for contempt, dated September 1, 1995, coded No. 161. That motion was denied by the court on October 10, 1995. The defendant filed a motion for contempt, dated September 1, 1995, coded No. 162. That motion was denied by the court on October 10, 1995. The defendant filed a motion for contempt, dated September 1, 1995, coded No. 163. That motion was granted by the court on October 10, 1995, and the plaintiff was ordered, within fifteen (15) days to comply with the court order and to provide to the defendant in writing the "care provider."
The plaintiff filed an application for relief from abuse under § 46b-15, dated September 11, 1995. An ex parte order was not entered. An order was entered after a hearing by the court on September 12, 1995, ordering "that the defendant not impose any restraint on the plaintiff, that he not threaten, harass, assault, molest, sexually assault or attack her, and that he not enter her dwelling at 10 Clapboard Ridge, No. 42, Danbury, Connecticut, and further ordering that no change be made to existing visitational orders. However, exchange of the minor child Casey Kinsey shall occur through either Winnie Harrington or Timothy Marquis. If visitation is through Winnie Harrington, she shall pick up and drop off the child. If it occurs through Timothy Marquis, the child shall be picked up and dropped off at his home. It was further ordered that Attorney Julie Foster investigate whether other people may serve as third parties for visitation pickup and dropoff. Any other such person that Attorney Foster deems as appropriate for this shall be submitted to the court by Attorney Foster and a new order shall issue, including their names." The defendant's attorney filed a motion to withdraw appearance, dated October 5, 1995, coded No. 165. That motion was granted on October 30, 1995. A motion for order, dated October 10, 1995, was filed by counsel for the minor child for the payment of counsel fees, coded No. 166. The defendant filed a motion for temporary custody and child support, dated October 30, 1995. The defendant filed a motion to restrain the plaintiff from permanently removing the parties' minor child from the State of Connecticut, dated October 30, 1995. The plaintiff filed a motion for order, dated October 31, 1995, coded No. 168. The plaintiff filed a motion for order, dated November 2, 1995, coded No. 169. The counsel for the minor child filed a motion for order, dated November 16, 1995, coded No. 170, regarding payment of fees. Counsel for the minor child filed a motion to compel the plaintiff to cooperate with the attorney for the minor child, dated November 16, 1995, coded No. 171. Counsel for the minor CT Page 3423 child filed a motion for order, dated November 16, 1995, coded No. 172, regarding the payment of legal fees. Counsel for the minor child filed a motion to compel the plaintiff to cooperate with the attorney for the minor child, dated November 16, 1995, coded No. 173. Counsel for the minor child filed a motion to compel the plaintiff to cooperate with the attorney for the minor child, dated November 21, 1995, coded No. 174. Counsel for the minor child filed a motion for order, dated November 21, 1995, coded No. 175, regarding the payment of legal fees. An order was entered on December 4, 1995, coded No. 176, that the plaintiff bring the minor child to meet with Attorney Julie Foster at the Carousel at the Danbury Fair Mall at 5:30 p.m. on Friday, December 8, 1995. The defendant was ordered to be there at 6:15 p.m. with an appropriate pick-up person. The parties were ordered to participate in the parent education program. Neither party completed the parent education program. A motion for contempt was filed by the defendant, dated December 4, 1995, coded No. 180. A motion for contempt/moving notice was filed by the defendant, dated December 4, 1995, coded No. 181. A motion for counsel fees was filed by the plaintiff, dated December 7, 1995, coded No. 182. A motion to waive fees for the parent education class was filed by the defendant, dated December 15, 1995, coded No. 183. That motion was denied by the court on January 2, 1996. On December 27, 1995, by order coded No. 184, the court denied an application for relief from abuse filed by the plaintiff, and denied an application for relief from abuse filed by the defendant, and ordered the defendant to bring the parties' minor child to the courthouse by 5 p.m. on that date and turned over to the plaintiff. The defendant filed a motion for contempt/visitation, dated February 9, 1996, coded No. 186. Counsel for the minor child filed a motion for order, dated February 27, 1996, coded No. 187, regarding the payment of legal fees. Counsel for the minor child filed a motion for order, dated February 27, 1996, coded No. 190, regarding the payment of attorney's fees. On February 29, 1996, the court interim orders regarding visitation. On March 4, 1996, the court entered an order, coded No. 195, regarding visitation to remain in place until a decision is rendered in the present case. The plaintiff obtained a temporary restraining order in New Jersey. The restraining order entered in New Jersey was dismissed. For approximately six to eight weeks after the plaintiff moved to New Jersey, the defendant did not exercise any visitation rights. He refused to come to New Jersey to pick up or drop off the child and the plaintiff refused to meet him at her old residence with the child, following the September 3, 1995 incident. CT Page 3424
The plaintiff's gross weekly income is six hundred forty-two dollars and sixty cents ($642.60), and her net weekly income is three hundred seventy-six dollars and forty cents ($376.40). The defendant's gross weekly income is seven hundred thirty-eight ($738) dollars, and his net weekly income is five hundred forty-one dollars and ninety-five cents ($541.95). Their combined net weekly income is nine hundred eighteen ($918) dollars. The total support obligation is two hundred eleven ($211) dollars. The defendant's share is one hundred twenty-four dollars and forty-nine cents ($124.49) under the guidelines.
Counsel for the minor child has submitted a reduced bill for services that she rendered, reducing the total number of hours being billed from fifty-five point six (55.6) to forty (40) at a reduced hourly rate of one hundred ($100) dollars per hour for a total of four thousand ($4000) dollars. The court finds that that amount is more than reasonable. The court further finds that the defendant has paid three hundred ($300) dollars to date, and the plaintiff has paid one hundred fifty ($150) dollars to date. The balance that is therefore due is three thousand five hundred fifty ($3550) dollars.
This court has considered the provisions of §§ 46b-56 and46b-56a regarding the issue of custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
A. BY WAY OF CUSTODY AND VISITATION
1. Custody of the minor child is awarded to the plaintiff.
2. The plaintiff is ordered not to permanently remove the minor child from the State of New Jersey prior to giving the defendant at least ninety (90) days advanced written notice by registered mail, return receipt or certified mail, return receipt.
3. The defendant is awarded the following visitation.
 a. Alternating weekends from Friday afternoon until Sunday at 6:30 p.m. or to Monday at 6:30 p.m., when one of his designated Monday holidays follows CT Page 3425 his weekend visitation. The defendant is to pick up the child at the child's day care center at Ft. Dix at his convenience at any time commencing Friday at 1 p.m., but prior to the time that the day care center closes in the afternoon. The defendant is to return the child to his mother's residence by 6 p.m. in Danbury, Connecticut, where the plaintiff is to arrange for the child to be picked up. Either party has the right to have the pickup and delivery done through third parties.
 b. Holiday visitation is to be alternated with the minor child spending Easter, Labor Day, and Christmas Eve from 5 p.m. to Christmas Day until noon with the mother in odd numbered years, and Memorial Day, Thanksgiving, and Christmas Day from noon until 8 p.m. with the father in odd numbered years; the schedule is to be reversed in even numbered years.
 c. The child will always be with the mother on Mother's Day and with the father on Father's Day.
 d. All of the pickup and delivery for the holiday and Father's Day schedule is to be accomplished by the defendant or his designee picking up the child in New Jersey at the child's day care and the plaintiff or her designee picking up the child at the defendant's mother's residence in Danbury for return to New Jersey.
 e. The defendant is permitted three weeks vacation with the child during the summer period, no more than two weeks of which may be consecutive. The defendant is required to give to the plaintiff written notification of the planned vacation days by registered mail, return receipt or certified mail, return receipt at least sixty (60) days prior to the vacation weeks that he elects.
4. This court retains jurisdiction over any future motions to modify custody or visitation that may be filed.
B. BY WAY OF SUPPORT
1. The court orders that the defendant pay to the plaintiff by way of support the sum of one hundred nine ($109) dollars weekly which is substantially in accordance with the support CT Page 3426 guidelines. An immediate wage execution is authorized.
2. The court orders that each party provide health insurance for the benefit of the minor child and that the parties divide equally any unreimbursed or uncovered health expenses for the minor child. The provisions of § 46b-84d is applicable.
3. The defendant shall have the right to take the minor child as an exemption for federal and state income tax purposes for each calendar year in which he is current in his support payments at the end of such calendar year.
C. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either the plaintiff or the defendant.
2. The balance of the three thousand five hundred fifty ($3550) dollars owed to counsel of the minor child is ordered to be paid as follows:
 a. The defendant is ordered to pay seventeen hundred ($1700) dollars.
 b. The plaintiff is ordered to pay eighteen hundred fifty ($1850) dollars.
Each party is ordered to pay their respective amount for attorney's fees at the rate of one hundred fifty ($150) dollars per month commencing May 1, 1996 and monthly thereafter.
D. MISCELLANEOUS ORDERS
1. The parties are ordered to exchange copies of their federal and state income tax returns within thirty (30) days after such returns have been filed by certified mail, return receipt or registered mail, return receipt for so long as there is an outstanding support order.
2. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and file in the clerk's office.
Axelrod, J.
CT Page 3427